**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Village of Morrisville  }
Water and Light Department  }
  }  Docket No. 43-3-04 Vtec
  }
  }

Decision and Order

Appellant Village of Morrisville Water and Light Department appeals from a decision of the Development Review Board (DRB) of the Town of Morristown, granting Appellant-Applicant Charles Gregory's application for approval of a six-lot subdivision. This appeal is taken as an on-the-record appeal as the Town has adopted and implemented the procedures necessary for such appeals. Appellant is represented by David John Mullett, Esq.; Appellee-Applicant Charles Gregory is represented by Gene Ann Condon, Esq.; and the Town of Morristown is represented by Amanda S.E. Lafferty, Esq.

This is the second appeal regarding this application. The initial decision of the DRB on the application was issued on July 17, 2003, based on the DRB's pre-application review on December 12, 2002; public hearings on March 27, 2003 and May 22, 2003; and a site visit held by the DRB on April 12, 2003. Due to the fact that the recording equipment at one or more of those hearings failed to record, the parties agreed that the appeal had to be vacated and remanded for further proceedings to be properly recorded before the DRB. This Court's November 4, 2003 remand order stated that " Applicant is free to revise the application or to present additional evidence before the DRB."

Appellee-Applicant filed a 're-application' for a subdivision permit for the identical subdivision on December 23, 2003, and the DRB held a new hearing on the application on January 8, 2004. No revisions were made to the application or the documents; all the substantive documents in the record are dated prior to the initial July 2003 decision.

The documentary record[1] and a digital audio CD containing the recorded January 8, 2004 hearing have been forwarded to the Court. The documentary record contained certain documents not appropriate for inclusion, which the Court has disregarded: the July 31, 2003 DRB decision (which had been vacated and remanded); and minutes of the hearings leading up to that decision: the December 12, 2002; March 27, 2003; and May 22, 2003 DRB meetings. As no record appears to have been made of the site visit held by the DRB on April 12, 2003, the Court also could not consider as evidence any observations that may have been made by the DRB members at that site visit.

No party has had the January 8, 2004 hearing transcribed; the Court has listened to the digital CD of the whole[2] hearing. The minutes of the January 8, 2004 hearing were also provided; they do not constitute evidence (except as agreed by the parties to substitute for the missing portion at the end of the hearing). In the present appeal, only the documentary evidence and the testimony taken at the January 8, 2004 hearing may be used in determining whether the February 12, 2004 decision of the DRB is supported by substantial evidence in the record. The parties were given the opportunity to submit written memoranda of law.

In an on-the-record appeal, the factual findings of the administrative body are given great weight, although they are not conclusive. The court must determine if substantial evidence exists in the record as a whole from which the factual findings of the DRB might reasonably be inferred. See In

re Petition of Town of Sherburne, 154 Vt. 596, 604-05 (1990); Appeal of Lussier and Noe, Docket No. 116-5-02 Vtec (Vt. Envtl. Ct., Sept. 16, 2002). If there was conflicting evidence, the DRB is the body charged with weighing this evidence and the court will not disturb its factual findings if supported by substantial evidence in the record as a whole. See Appeal of Doyle, Docket No. 100-5-02 Vtec (Vt. Envtl. Ct., Jan. 21, 2003). However, a DRB is obligated to make findings that will make a clear statement to the parties, as well as to the courts in the event of an appeal, on what was decided and how the decision was reached, and the court is directed not to peruse an inadequate record to the extent of making its own assessment of the weight to be given to the evidence in the record. E.g., In re Appeal of Leikert, Docket No. 2004-213 (Vt. Supreme Court, Nov. 10, 2004) (three-justice panel).

Upon consideration of the record and the parties' memoranda, the court determines that the following facts are supported by substantial evidence in the record as a whole, and concludes as follows.

Appellee-Applicant owns a 93-acre parcel of land off Route 15A (Park Street) in the ' Rural Residential with Agriculture' zoning district of the Town of Morristown. All the land except for a small portion in the extreme southwestern corner of the parcel also lies within an overlay zoning district for the Public Community Ground Water Source Protection Area of Appellant's water system, which uses two gravel wells next to the river.

A proposal for a six-lot subdivision in this zoning district must be reviewed under the subdivision review standards in Articles VII and VIII of the Zoning and Subdivision Bylaws, and each lot must meet the use and dimensional standards in § 260 for that district. In addition, any development proposed within a Public Community Ground Water Source Protection Area must meet the requirements of § § 300 through 305 of the Bylaws.

Appellee-Applicant proposes a six-lot subdivision consisting of five single-family residential lots (Lots 2 through 6, ranging from 3.8 acres to 7.0 acres in size), with a remaining 63.7-acre parcel (Lot 1) of retained land. The retained parcel is not proposed for development, and is subject to a deferral-of-permit under the state subdivision approval process.

The five proposed residential lots are located in the southwestern area of the property, at its upper elevation away from Route 15A. Access to the lots is via an existing private road that crosses an existing neighboring lot over a fifty-foot-wide right-of-way. The access will remain private, but was proposed orally at the hearing to be upgraded in width to Town road standards up to the point at which it serves three or fewer lots; beyond that point the driveways will meet the Town's driveway standards.

The house sites are proposed to be served by on-site drilled wells, which are expected to reach into the bedrock and not to draw from the gravel layer serving the municipal water system. Even if they were to draw from the same aquifer, they are small enough and far enough away from the municipal water system so that their zone of influence (extending only 100 to 150 feet from each well) would not affect Appellant's wells.

Appellee-Applicant proposes to locate all five[3] of the primary leach fields and all five of the replacement leach field areas in an approximately .4-acre area on Lot 6, outside of the Source Protection Area. Each system is designed to handle 560 gallons per day, so that the five systems will be handling 2800 gallons per day. At the hearing, Appellee-Applicant's engineer stated that the plans before the DRB had not yet been revised to reflect that the Source Protection Area boundary was some 50 feet closer to the property boundary than shown on the plans. He stated that the leach fields could be placed on the property outside of the Source Protection Area's revised boundary, and stated Appellee-Applicant's willingness to accept a condition that the plans

be revised and that an amended state wastewater permit be obtained as a condition of the subdivision approval.

No party provided hydrogeological expert evidence to the DRB in connection with this application, except the evidence not specific to this proposal that was contained in Appellant's source protection plan and in the supporting material. The soils map shows that there is an impeding clay layer between the leach field location and the aquifer, approximately five to six feet below the surface of the ground and approximately seven feet thick. The soils above the impeding layer are coarse granular soils through which liquid flows relatively quickly. Without the impeding layer, they would not provide a sufficient retention time in the soil for treatment. However, with the impeding layer, septage or other pollution that flows through the coarse granular soils is expected to hit the impeding layer and to be conducted along it in a westerly direction (away from the Source Protection Area), from which it would reach the river downstream from Appellant's wells and where it would not in any event reenter the groundwater and therefore would not reach the subsurface aquifer at the location of Appellant's wells. This theory assumes that the impeding layer is continuous, and that it will not be breached by the construction of basements, water well casings, or other subsurface work in connection with the construction of the houses or garages on the lots.

Soils testing done by hydrogeologists for a project in 1988 proposed for a location on the property much closer to Appellant's wells showed, however, that at least in the area of that proposal the impeding clay layer was not continuous, that is, that it had areas of holes or voids through which subsurface pollution could flow through into the deeper aquifer. No evidence was presented in the present case regarding the likelihood of that occurrence, and no conditions were proposed or imposed to prevent or regulate the potential for breach of that impeding clay layer due to the construction of basements, water well casings, or other subsurface work on the five residential lots.

Appellee-Applicant argues that, as the five individual and five replacement leach fields for the septic systems are proposed to be located outside the Source Protection Area, the proposal should be considered a permitted use in a Source Protection Area under § 303 of the Bylaws. However, portions of the sewage disposal facilities are located over or impacting the Source Protection Area: the septic tanks (for Lots 2, 3, 4, and 5), and the septage pump stations and force mains (for Lots 2 and 4) and siphon chambers and sewer piping (for Lots 3 and 5), and therefore the proposal must be treated as a conditional use in a Source Protection Area under § 304. Under § 304 the proposed subdivision may only be allowed if approved by the DRB as a conditional use, that is, under § § 630 et seq., and then only if the DRB also determines " that such uses will not pollute or have any undue adverse effects on the groundwater supply."

In the present case, the DRB did not take evidence on, make findings on, state conclusions on or otherwise address any of the conditional use standards in § 630 and the following sections, in particular the standards found in § § 632.1, 633.2, 634, and 636 relating to health, water supply and the effect on community facilities. Therefore, even if the remainder of the DRB decision could be upheld, the decision would have to be reversed and remanded for the DRB to take evidence on and make findings and conclusions on whether the proposal meets the conditional use standards of the Town's own Bylaws.

Under those standards, Appellant's witness did present some evidence on the specific risks to groundwater from one component of gasoline: methyl tertiary butyl ether (MBTE), due to its small molecular size. The evidence presented was that one gallon of spilled gasoline can contaminate 100,000 gallons of water, and that if it contaminates a water source it can be removed, but at a great financial cost. Evidence was presented that some level of protection could be achieved by a plastic lining under appropriately-designed paved parking areas or garages, to contain a spill. Evidence was also presented that conditions limiting or prohibiting pesticide use[4] might also be appropriate to protect the water supply. Appellant also requested the installation of monitoring

wells at the periphery of each proposed residential lot, with a sampling schedule frequent enough to provide Appellant with an early warning if contaminants were in fact to be leaching from the developed lots towards Appellant's wells.

The Court does not make any determination in the present appeal as to the weight to be given to this evidence or what, if any, conditions might be appropriate to impose under those standards; the DRB will have to undertake that analysis in the remanded proceedings. The fact that Appellant's well field is directly adjacent to Route 15A any may be at risk from other pollution sources may certainly be considered in that analysis, but it does not relieve the DRB of the responsibility for conducting that analysis.

Appellant also requested consideration of a condition imposing liability insurance to cover any remediation of the water supply should the conditions not be adhered to or should contamination occur accidentally. We note for the parties' consideration on remand that the amendments to 24 V.S.A. Chapter 117 now specifically provide in § 4464(b)(2) that a " bylaw may provide for the conditioning of permit issuance on the submission of a bond, escrow account, or other surety . . . to assure . . . protection of public facilities that may be affected by a project."

By contrast with the conditional use standards, the DRB did apply or attempt to apply the subdivision standards and the § 304 standard that the proposed uses not 'pollute or have any undue adverse effects on the groundwater supply.' Nevertheless the DRB's findings are inadequate to support its conclusions under those standards as well, even if we consider factual statements in the ' conclusions' section to be findings of fact, as well as those in the ' findings' section of the DRB decision. In particular, as to the risk to Appellant's wells, the DRB decision recited what it characterizes as ' inconsistent and sometimes conflicting information' in Appellant's Source Protection Plan, but did not make findings as to which of that information (or any other information) it relied on to support its conclusion that " there will be no adverse effect on the public groundwater supply provided the conditions [imposed by the permit] are met." Nor did the decision show how compliance with the specific conditions would satisfy the conditional use standards, the subdivision standards, or the § 304 standards. Compare, In re Appeal of Leikert, Docket No. 2004-213 (Vt. Supreme Court, Nov. 10, 2004) (three-justice panel).

Although the DRB did consider the location of the leach fields as lying beyond the Source Protection Area, it did not make any findings as to whether the houses themselves and their vehicles and garages, all located within the Source Protection Area, would pollute or have any undue adverse effects on the groundwater supply, and did not make any findings as to whether the leach fields would have or have any undue adverse effects on the groundwater supply, and did not make any findings supporting whether any protective conditions were necessary.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the DRB's February 12, 2004 decision approving Appellee-Applicant's subdivision within the Source Protection Area for Appellant's wells, is REVERSED and REMANDED for further proceedings consistent with this decision. This decision concludes this appeal.

Done at Barre, Vermont, this 30th day of December, 2004.

_____
Merideth Wright
Environmental Judge

## Footnotes

1. It appears that the documents forwarded to the Court are not the original documents in the record but are photocopies. No party has objected, but we note for future reference that certain information highlighted in color on some of the original exhibits (see, e.g., Exhibit 8, Attachment E, as referenced on page 2 of Exhibit 8) was not highlighted on the copies sent to the Court. In addition, the source protection plan (Exhibit 36) is marked 'draft' and contains highlighting of unknown origin not in the original.

2. The CD recorded an hour and twenty-two minutes. The parties stipulated that the CD is missing some of the end of the hearing, but that the missing recording does not prevent the decision from being considered on the record. They agreed that the Court should use the minutes of the remainder of the hearing in place of the audio recording as the record of the remainder of the hearing.

3. At the hearing, Appellee-Applicant's engineer stated that this design would probably be reconfigured to create a single community leachfield (and, presumably, a single community replacement area) to serve all five lots. Such a reconfigured design was not before the DRB and hence is not before the Court for approval; in addition, it would have to meet the standards in §840.6c and, presumably, §870.1, of the Bylaws, as well as all the standards discussed in this decision that should have been applied to the present application.

4. Conditions imposed in the decision included a requirement that the deeds to the lots contain covenants prohibiting the use of "non-organic pesticides, insecticides and fertilizers" in the subdivision, and prohibiting the disposal of any "organic or inorganic contaminants." However, the decision does not define any of the terms, does not make the conditions enforceable by the town, and does not contain any findings linking the conditions to the conditional use standards, the subdivision standards, or the §304 standards.